1999-NMCA-142

994 P.2d 1164

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Michael Zane ULIBARRI, and Julianne Popplewell, Defendants–Appellees.**

State of New Mexico, Plaintiff–Appellee,

v.

**Carlos Ray Montoya, Defendant–Appellant.**

Nos. 19,126, 19,451.

Court of Appeals of New Mexico.

Oct. 20, 1999.

Certiorari Granted, No. 26,027,
Dec. 2, 1999.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, for State of New Mexico.

Michael E. Vigil, Marchiondo, Vigil & Associates, P.C., Albuquerque, for Appellees Ulibarri and Popplewell and for Appellant Montoya.

## OPINION

BUSTAMANTE, Judge.

{1} These consolidated cases present the same issue: Whether a prosecutor is required to instruct the grand jury on the record of the essential elements of offenses it is to consider. We determine that instruction on the record is necessary, and for the reasons discussed herein we affirm the order of dismissal in *State v. Ulibarri & Popplewell*, No. 19,126, and reverse the order in *State v. Montoya*, No. 19,451.

## FACTS AND PROCEEDINGS

### *State v. Ulibarri and Popplewell*

{2} On June 18, 1997, the district attorney for the Second Judicial District presented the State's case against Michael Zane Ulibarri (Ulibarri) and Julianne Popplewell (Popplewell) in the same proceeding. Ulibarri was charged with (1) trafficking cocaine, (2) conspiracy to traffic cocaine, (3) possession of marijuana, and (4) possession of drug paraphernalia. Popplewell was charged with the same four crimes, and was in addition charged with tampering with evidence. Ulibarri's grand jury indictment is reproduced as Appendix A to this opinion; Popplewell's indictment is reproduced as Appendix B. A transcript of the grand jury proceeding reveals that the district attorney presenting the case did not provide the grand jury a detailed listing of the elements of each crime. Instead, the district attorney seems to have read only the "Crimes Charged" portion of the indictment documents before presenting the testimony of one of the investigating officers. Although it is not clear from the transcript, the grand jury was apparently

then released to deliberate, eventually returning "true bills" on both Defendants.

{3} Defendants Ulibarri and Popplewell filed a motion to dismiss the indictment on a number of grounds, including the failure of the district attorney to instruct the grand jury on the essential elements of the offenses with which they were to consider charging Defendants. In its response to the motion to dismiss, the State agreed that no elements instructions were read on the record to the grand jury "because it does not by procedure occur." The State argued that verbal reading of elements was not required by UJI 14-8001 NMRA 1999, and that the grand jury had available to it sufficient "advisory materials" to meet the UJI requirement of advising. These advisory materials included the proposed indictments (Appendices A and B), "a manual which contains the elements of commonly charged crimes," the orientation instructions given each grand juror, and access to the judge assigned to the grand jury. In addition, the State provided an affidavit by the prosecuting attorney. The affidavit asserted that the case against Ulibarri and Popplewell was presented "in a manner consistent with established practice and procedure in the Second Judicial District for making presentations to the Grand Jury." The affidavit also described the procedure and materials outlined above.

{4} The district court held argument on Defendants' motion on August 21, 1997, and then took the matter under advisement. The court issued a decision letter on September 23, 1997, granting the motion to dismiss on the grounds that the procedure followed by the district attorney did not comply with NMSA 1978, § 31-6-8 (1983). The State filed a motion for reconsideration, and the district court held a hearing on that motion on December 9, 1997. At the hearing, the State offered the testimony of the district attorney who had handled the grand jury presentation. The district attorney testified that the manual had come into use in approximately 1992, in part as a result of some controversy concerning "what the [S]tate told the grand jury in terms of orientation and advising them on different legal issues." The manual and two "organizational" videos were developed to serve as aids to the grand jury at its inception and throughout its service. The manual was to "advise the grand jury as to the law of the crimes charged, so they had that in the grand jury room." The manual was given to the grand jury when it convened, and was available to grand jurors each day they deliberated. The plan was to give the grand jury a copy of the proposed indictment and let the jurors use the manual during deliberations. The district attorney would be available to answer questions but would not otherwise give the grand jury specific advice. The district attorney testified that it was his practice to go through a few cases in detail, including a "step-by-step" walk through of charges as a way to show the jurors how to use the manual. After this initial orientation, he would normally only give the name of the crime to be charged. The district attorney further testified that he had never had a juror complain about the procedure or profess any difficulty with it.

{5} Following the hearing on the State's motion for reconsideration, the district court entered its order dismissing the indictments. The district court found that the procedure followed by the district attorney did not comply with Section 31-6-8 and with NMSA 1978, § 31-6-10 (1979).

*State v. Montoya*

{6} The grand jury indicted Defendant Carlos Ray Montoya (Montoya) on September 3, 1997, on ten counts, including first and second degree murder, aggravated battery, and shooting at or from a motor vehicle or at a dwelling. A copy of the indictment is attached to this opinion as Appendix C. Montoya was represented by the same counsel as Defendants Ulibarri and Popplewell. Defendant Montoya moved to dismiss the indictment on December 1, 1997, on the same basic grounds; that is, that the procedures the district attorney followed in presenting the case to the grand jury did not comply with the mandatory requirements of Sections 31-6-8 and 31-6-10. The motion was argued to a different division of the district court for the Second Judicial District, however, and the argument in Defendant Montoya's case took a slightly different turn. Here, the

district attorney agreed that the elements of the ten crimes charged were not read verbatim on the record to the grand jury. Instead, as in the Ulibarri/Popplewell case, the grand jury was given the proposed indictment, presented with testimony, and then allowed to deliberate with the aid of the manual described above. In essence, the district attorney conceded that he had not strictly complied with Section 31–6–8 when presenting the case to the grand jury. The district attorney argued instead that Defendant Montoya was required to prove actual prejudice to obtain any relief. As a result of the way the argument unfolded, a transcript of the grand jury proceeding was not submitted as an exhibit below, and it is thus not available to us.

{7} Following argument, the district court entered an order denying the motion to dismiss. The court found that the State's failure to "verbally instruct the grand jury on the essential elements of the offenses to be considered by the grand jury" was contrary to Section 31–6–10 and UJI 14–8001. The district court also found that the lack of a verbatim record reflecting that the grand jury was instructed on the elements of the offenses was contrary to Section 31–6–8 and UJI 14–8001. However, the district court held that "defendants must show actual prejudice regarding the [S]tate's violations of Sections 31–6–8, 31–6–10, and UJI 14–8001." The district court apparently determined that Defendant Montoya had not demonstrated actual prejudice.

*DISCUSSION*

{8} Resolution of the issue before us involves an analysis of the provisions of Sections 31–6–8, 31–6–10, UJI 14–8001 and Rule 5–506 NMRA 1999. Section 31–6–8 provides in pertinent part: "All proceedings in the grand jury room, with the exception of the deliberations of the grand jury, shall be reported verbatim," and the notes are to be deposited with the clerk of the district court and presumably made available to the parties if an indictment is returned. *See also* Second Judicial District Local Rules, LR2–401(A) NMRA 1999 ("Only parties, through counsel or pro se, shall have access to grand jury tapes without an order of the Court."). Section 31–6–10 provides in pertinent part:

Before the grand jury may vote an indictment charging an offense against the laws of the state, it must be satisfied from the lawful evidence before it that an offense against the laws has been committed and that there is probable cause to accuse by indictment the person named, of the commission of the offense so that he may be brought to trial therefor.

UJI 14–8001 provides in pertinent part: "The district attorney will advise you of the essential elements of any offense which is to be considered. You must carefully consider these elements prior to returning an indictment." UJI 14–8001 goes on to inform the grand jury that the New Mexico statutes and "[a] copy of this [UJI 14–8001] and other instructions will be placed in your hands for your further guidance and information." Finally, Rule 5–506(B) provides in applicable part: "A sound recording shall be made of the testimony of all witnesses and any explanation of instructions of the prosecutor and any comments made by the prosecutor ... in the presence of the grand jury. No record shall be made of the deliberations of the grand jury."

{9} The State agrees, of course, that it has an obligation to advise the grand jury of the elements of offenses it presents to the grand jury. The State notes that neither the statutes nor the uniform grand jury instruction explicitly require that crime elements be read aloud. It argues that it fulfills its obligation by providing the grand jury with a manual at the beginning of its term. Defendants argue that providing the manual is not sufficient because the procedure does not result in the creation of a verbatim recording of "proceedings" before the grand jury. Defendants assert that the only way to create a verbatim recording of the district attorney advising the grand jury of the elements of a crime is to require the State to read them aloud in each case for each crime alleged. We hold that advisement of the elements of crimes charged is a necessary "proceeding" within the meaning of UJI 14–8001, Rule 5–506(B) and Section 31–6–8, and as such, providing a written manual to the

grand jury is not, by itself, sufficient to comply with the requirement to create a verbatim record of "proceedings" before the grand jury.

{10} The modern institution of the grand jury serves two basic functions; both aptly described in UJI 14–8001. One purpose of the grand jury "is to investigate the matter for which [it is] called and to determine from the evidence if there is probable cause to believe an offense has been committed." *Id.* On the other hand it is also the grand jury's "duty to protect citizens against unfounded accusations whether they come from the government or others, and to prevent anyone from being indicted through malice, hatred or ill will." *Id.*

Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

*Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); *see also Davis v. Traub,* 90 N.M. 498, 500, 565 P.2d 1015, 1017 (1977) (per curiam) ("The grand jury has evolved to where it now functions as a guardian of the citizens' right to be free from government harassment unless good cause is shown for attempting a prosecution."). While the grand jury should not be "the tool of the prosecuting authority to manipulate at will," *Davis,* 90 N.M. at 500, 565 P.2d at 1017, neither should it be subject to undue interference with its deliberative and decisional process, *see Buzbee v. Donnelly,* 96 N.M. 692, 702, 634 P.2d 1244, 1254 (1981); *see also State v. Bigler,* 98 N.M. 732, 734, 652 P.2d 754, 756 (Ct.App.1982).

{11} To preserve the integrity and independence of the grand jury process, the law surrounding the process, particularly the statutes, the rule, and the uniform instruction, make several things clear. (1) The grand jury as a body stands apart from the executive and judicial departments of government. *See* N.M. Const. art. II, § 14; *Buzbee,* 96 N.M. at 695, 634 P.2d at 1247 ("[U]nder the common law and constitutional provisions, the grand jury is considered to be an independent agency from both the Executive and the Judicial Departments...."). (2) The grand jury may order that evidence be produced over and above that initially presented by the State.. *See* UJI 14–8001. (3) Prosecuting attorneys are required to "conduct [themselves] in a fair and impartial manner at all times when assisting the grand jury." NMSA 1978, § 31–6–7 (1969). (4) The secrecy of grand jury proceedings—in particular deliberations—is to be assiduously guarded. (5) Testimony is to be taken in private, with only authorized persons and necessary persons present. *See* NMSA 1978, § 31–6–4(B), (C) (1981); *Davis,* 90 N.M. at 500–01, 565 P.2d at 1017–18. (6) And as already noted, the proceedings of the grand jury, other than its deliberations, are to be recorded and made available to indicted defendants. *See* § 31–6–8.

{12} Challenges to grand jury action based on these features have usually taken two basic forms. Some cases challenge indictments based on the quality of evidence presented to the grand jury. *Buzbee* is an example of this type of challenge. In *Buzbee,* the defendants raised due process and statutory objections to their indictments on the ground that the prosecutor had not presented arguably exculpatory evidence to the grand jury. After presenting a detailed history of the grand jury as an institution, our Supreme Court concluded that use of evidence inadmissible at trial to obtain an indictment did not raise constitutional difficulties, although it decided the case based on the language of NMSA 1978, § 31–6–11 (1981), as it then existed. *See Buzbee,* 96 N.M. at 706–08, 634 P.2d at 1258–60. This ruling was consistent with the majority rule that evidentiary deficiencies at the level of the grand jury should not be subject to challenge absent a showing of actual prejudice to the defendant and a finding of "flagrant prosecutorial misconduct." *Id.* at 701, 634 P.2d at 1253. The ruling was also consistent with a general reluctance to burden the grand jury with "litigious interference" with its pro-

ceedings given that the State is required to prove its allegations against the defendant beyond a reasonable doubt at trial. *Id.* at 702, 634 P.2d at 1254 (citation and internal quotation marks omitted); *see also Maldonado v. State*, 93 N.M. 670, 670–71, 604 P.2d 363, 363–64 (1979); *State v. Chance*, 29 N.M. 34, 39, 221 P. 183, 184–85 (1923) ("[U]nless there is some clear statutory authority to do so, we think the courts are without power to review [the grand jury's] action to determine whether or not it had sufficient or insufficient, legal or illegal, competent or incompetent evidence upon which to return an indictment.").

{13} The other type of challenge generally involves the manner in which the grand jury process is conducted. In New Mexico this has arisen most frequently in the form of challenges to the presence of unauthorized persons in the grand jury room, either during testimony or during deliberations. *See Baird v. State*, 90 N.M. 667, 669, 568 P.2d 193, 195 (1977); *Davis*, 90 N.M. at 499–500, 565 P.2d at 1016–17; *State v. Hill*, 88 N.M. 216, 218–19, 539 P.2d 236, 238–39 (Ct.App. 1975). In *Hill*, an involuntary manslaughter case, this Court quashed an indictment and reversed a conviction because the district attorney and the supervising district court allowed an unauthorized person to be present and actually help the district attorney present the case to the grand jury. *Id.* at 216, 539 P.2d at 236. The person had previously worked for the district attorney, but at the time of his appointment as "associate counsel" he was "employed on a fee basis, not by the State, but by … [the] father-in-law of the deceased." *Id.* at 218, 539 P.2d at 238 (emphasis omitted). We emphasized the need for secrecy in grand jury proceedings and the potential conflict of interest inherent in having an interested person presenting the case. Following a long line of authority, we held that the defendant was not required to show actual prejudice flowing from the unauthorized presence; we would presume prejudice because of the obviously improper nature of the violation. *See id.* at 219–20, 539 P.2d at 239–40.

{14} *Davis* presented a factual circumstance similar to *Hill*. In *Davis*, an investiga-

tor with the attorney general's office was present during the evidentiary presentation to the grand jury, acting as a bailiff. The investigator had assisted in collecting information and had interviewed some of the witnesses who testified before the grand jury. Emphasizing the need to prevent the possibility of undue influence on witnesses and jurors, our Supreme Court held that it was improper to allow the investigator to be present "when his presence could have had a coercive or oppressive effect on some of the witnesses." *Davis*, 90 N.M. at 501, 565 P.2d at 1018. The Supreme Court affirmed the decision in *Hill* that prejudice would be presumed in this circumstance. *See id.* at 499, 565 P.2d at 1016. The Supreme Court's rationale for presuming prejudice rested on two grounds. First, the Court felt that violation of the statutes fostering the secrecy and investigative integrity of the process called for vigorous enforcement. As the Court stated: "We will not permit anyone to circumvent the letter or the spirit of those laws." *Id.* at 500, 565 P.2d at 1017. The Court also cited the practical problem of proof of prejudice, including the unsavory potential for requiring the testimony of grand jurors. *See id.* at 501, 565 P.2d at 1018. The Supreme Court was obviously concerned with the unwanted and untoward implications of post-indictment interrogations of grand jurors. Those concerns are of equal importance to us today.

{15} The parties' differences here revolve broadly around these divergent approaches to deficits in the grand jury process. Should we treat the conceded failure to provide some indication on the record that the jury has been apprised of the elements of the crimes it is to consider as an issue calling for deference to the discretion of the prosecutor and the decision of the jury? Or, as Defendants argue, does this failure go to the "very heart of the grand jury system," thus demanding more exacting compliance with the letter and spirit of the law? *Bigler*, 98 N.M. at 734, 652 P.2d at 756. We are convinced that advising the grand jury of the elements of crimes prior to its deliberations is a matter that goes to the heart of the grand jury's function and responsibility. As such, we hold that providing the jury with a manual at the

beginning of its term does not comply with the requirements of UJI 14–8001 and Section 31–6–8 that proceedings before the grand jury shall be reported verbatim. *See State v. Superior Court ex rel. County of Pima*, 26 Ariz.App. 482, 549 P.2d 577, 579 (App.1976); *cf.* 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 15.5(e), at 328 (1984) ("[A]n indictment will be dismissed if the prosecutor fails to take ... the minimal step of reading the relevant statute to the jury.").

{16} The requirement of verbatim reporting has two obvious purposes. First, the report of the testimony given provides an opportunity to impeach witnesses at trial in the event of inconsistencies. *See* Rule 11–801(D)(1)(a) NMRA 1999. The second purpose is to provide a check on prosecutorial abuses. *See State v. Velasquez*, 99 N.M. 109, 113, 654 P.2d 562, 566 (Ct.App.1982). The first of these purposes is not implicated in these cases. The second is implicated, though only because it is related to a third purpose we perceive; that is, to provide record evidence that the jury has been explicitly advised of the elements of the crimes it is charged with considering. We can think of no other way to ensure that the grand jury is appropriately guided—at least one time—in each case as to the elements it is to match against the evidence it receives. Record evidence of that guidance is necessary to assure defendants and the public that the jury was provided all the information needed to make its decision of probable cause appropriately.

{17} The State objects that whether the "elements are read aloud or provided in writing, there is no way to be certain that the grand jury has understood and correctly applied them." As an observation on human nature, the State's point is well taken. We recognize that mere compliance with procedural rules will not necessarily overcome human foible. But that is not an argument against insistence on compliance. As we have noted in the past, because defendants have no rights concerning grand juries except that they "be duly impaneled and conducted according to law," their rights in this regard should be "rigorously protected." *Baird*, 90 N.M. at 669, 568 P.2d at 195.

{18} Relying on *Bigler*, the State also argues that we should treat use of the manual as a failure to observe technical requirements or formalities. In *Bigler*, trouble "with the jack on the mixer" caused a sixty-five second blank in the tape at the beginning of one witness's testimony. *Id.* at 733, 652 P.2d at 755. The witness testified for a total of six minutes. The entire grand jury proceeding was contained in six sixty-minute tapes. As we noted, the blank tape comprised approximately 0.2% of the entire recording. *See id.* & n.1, 652 P.2d at 755 & n.1. In these circumstances, we held that the blank—or the failure to comply strictly with the verbatim reporting requirement—should be treated as a technical violation, and we refused to presume prejudice under the circumstances. *See id.* at 734, 652 P.2d at 756. The missing testimony was clearly de minimis in the context of the entire material presented to the grand jury. Missing testimony primarily invokes concerns regarding availability of the record for impeachment purposes. It would be unreasonable to presume prejudice as a means of protecting this purpose when the vast majority of the testimony was available. In essence, we decided that the apparently inadvertent loss of 0.2% of the testimony did not go to the heart of the grand jury system. Thus, we treated the error as a question of evidence, not normally subject to the per se prejudice rule. We doubt *Bigler* would have taken the same approach if a material percentage of the testimony had been missing, or if all the testimony of the one witness were lost.

{19} Two final issues present themselves: How may prosecutors comply with UJI 14–8001, Rule 5–506(B), and Section 31–6–8 hereafter? And how should this opinion be enforced in other cases? With regard to the first question, we are aware that the Second Judicial District presents thousands of cases to the grand juries it has sitting each year. We are not deaf to concerns of efficiency, but they cannot override the requirements of Supreme Court Rules or statutory provisions.

{20} We have reviewed the manual admitted in evidence in the Ulibarri/Popplewell case. We agree that certain of the

information contained in it may be useful to the prosecutor and to the grand jurors. We do not share the State's confidence, however, that jurors can reasonably be expected to compare indictments accurately with the approximately 165 pages of criminal jury instructions and other material contained in the manual without more specific guidance from prosecutors, though we certainly believe the manual can be used as an adjunct or guide for jurors. We believe instead that the requirements of UJI 14–8001, Section 31–6–8, and Rule 5–506(B) are satisfied if the prosecutor specifically directs the grand jurors, on the record, to the portions of the grand jury manual where the appropriate elements of the offense or offenses under consideration may be found. In such case, a copy of the elements of each offense considered should also be made a part of the record. The prosecution would need to be available to answer grand juror's questions about the manual on the record as well. This procedure would ensure that the jury is explicitly advised where it can read the elements of each crime charged and how to get additional help if needed. And defendants would be able to verify that the jury was at least referred to the correct set of elements before it was asked to deliberate. This is particularly important in cases where crimes can be committed in multiple factual circumstances. Of course, this procedure will be effective only if the manual is generally available to defendants.

{21} The issue of prospective as opposed to retroactive application of our ruling presents a potentially more difficult issue. In *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court adopted a rule of universal retroactivity in criminal cases; in the process abandoning the more flexible but much-criticized approach of *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). *See Teague v. Lane*, 489 U.S. 288, 302–05, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The United States Supreme Court adopted a similar approach in civil cases a few years after *Griffith. See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 89–90, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Our Supreme Court declined to follow Har-

per, choosing instead to adopt a rebuttable presumption of retroactivity in civil cases. *See Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 398, 881 P.2d 1376, 1383 (1994).

{22} New Mexico courts have not dealt comprehensively with the issue of retroactivity in the context of criminal cases as yet. *See Santillanes v. State*, 115 N.M. 215, 223–25, 849 P.2d 358, 367–68 (1993) (noting that courts have inherent power to give their rulings prospective or retroactive application and applying its ruling to "all cases which are now pending on direct review, provided the issue was raised and preserved"). Characterizing its application of its ruling as prospective, the Supreme Court in *Santillanes* cited *Linkletter* in support of its ruling, but failed to mention that the United States Supreme Court had abandoned the *Linkletter* approach. *See Santillanes*, 115 N.M. at 224, 849 P.2d at 367; *see also Jackson v. State*, 1996–NMSC–054, ¶ 6, 122 N.M. 433, 925 P.2d 1195 (emphasizing the case-by-case nature of the prospective/retroactive inquiry and again citing *Linkletter* ). Finally, in *State v. Kirby*, 1996–NMSC–069, 122 N.M. 609, 930 P.2d 144, our Supreme Court applied its holding in *State v. Yarborough*, 1996–NMSC–068, ¶ 20, 122 N.M. 596, 930 P.2d 131, to a case in which the defendant had been tried and sentenced before the new rule had been announced by this Court. The Supreme Court allowed application of the new rule even though the issue had not been raised or preserved at the trial court level in *Kirby*. It reasoned that the doctrine of fundamental error overrode the issue of retroactive application. *See Kirby*, 1996–NMSC–069, ¶¶ 4, 8, 122 N.M. 609, 930 P.2d 144. In addition, the Supreme Court held that application of the new rule was appropriate because the case was still pending. *See id.* ¶ 8.

{23} Our understanding of these cases is that reviewing courts should carefully weigh the effects of their rulings in light of the three factors recognized in *Linkletter*; that is, "the purpose of the new rule, the reliance placed upon the old rule, and the effect upon the administration of justice that retroactive application would have." *Santillanes*, 115 N.M. at 224, 849 P.2d at 367. Of

the three, the potential effect on the administration of justice is clearly predominant in this case. Reliance is not an issue here simply because there has never been an appellate court ruling approving of the procedure we are examining. The purpose of our ruling is simply to require strict compliance with the statutory and Supreme Court provisions controlling the grand jury process. This is primarily a forward-looking concern. The difficulty with the grand jury procedure we have disapproved here is real and important, but it is not one that can be expected to carry forward into or past a trial on the merits of the case. The grand jury only makes a finding of probable cause. A defendant should not be required to face a trial in the absence of probable cause. But at a trial on the merits, the State has the obligation to prove not just probable cause but guilt beyond a reasonable doubt. *See* UJI 14–5060 NMRA 1999. Like difficulties with the quality or type of evidence relied upon by the grand jury in returning an indictment, any question of probable cause is necessarily obviated by a finding of guilt. *See Buzbee*, 96 N.M. at 704–05, 634 P.2d at 1256–57; *Maldonado*, 93 N.M. at 670–71, 604 P.2d at 363–64. Thus, any ruling that would call into question any plea arrangement, verdict or other posthearing resolution of cases would be unwarranted and pernicious.

■ {24} Therefore, we limit our ruling to cases currently pending and untried in the Second Judicial District. In addition, dismissals for failure to comply with the grand jury statutes and rules are of necessity without prejudice. The district attorney and defendants should have ample time to determine a reasonable response, including reindictment.

*CONCLUSION*

{25} The practice of simply providing the grand jury with a written manual containing UJI instructions and not indicating on the record that the jury has been at least referred to the appropriate sections of the manual for each crime listed on indictments does not comply with Sections 31–6–8 and 31–6–10 of the New Mexico statutes, Rule 5–506(B), or UJI 14–8001. The judgment of the district court in *State v. Ulibarri* and *Popplewell* is affirmed. The judgment of the district court in *State v. Montoya* is reversed.

{26} **IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.

### APPENDIX A

*CRIMES CHARGED*

TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE)

CONSPIRACY TO COMMIT TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE)

POSSESSION OF MARIJUANA (MORE THAN ONE OUNCE)

POSSESSION OF DRUG PARAPHERNALIA

*GRAND JURY INDICTMENT*

THE GRAND JURY CHARGES:

COUNT 1: TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE)

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant intentionally had COCAINE, a narcotic drug which is a controlled substance, in his possession, with the intent to transfer it to another, knowing or believing it to be COCAINE, or believing it to be some drug or other substance the possession of which is regulated or prohibited by law, contrary to § 30–31–20(A)(3), NMSA 1978.

COUNT 2: CONSPIRACY TO COMMIT TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE)

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant and ANOTHER PERSON(S) by words or acts agreed together to commit TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE), and they intended to commit TRAFFICKING (BY POSSESSION WITH

INTENT TO DISTRIBUTE) (COCAINE), contrary to § 30–28–2 and § 30–31–20(A)(3), NMSA 1978.

## COUNT 3: POSSESSION OF MARIJUANA (MORE THAN ONE OUNCE)

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant intentionally had more than one ounce but less than eight ounces of marijuana, a controlled substance, in his possession, and the defendant knew it was marijuana, contrary to § 30–31–23, NMSA 1978.

APPROVED:

_For Elliott Guttman_____
Assistant District Attorney

### CASE INFORMATION

DA FILE# : 97–1226–01

MET. CT. # : unknown

LEA/RPT# : BCSO/96–566136

ADA: RICHARD BOWMAN/pas

DOB: 05–24–66

SS# : 585–17–7403

ADD: 6920 Roble Blanco SW/87105

DEF. ATTY:

ARR.# & Date: December 13, 1996

## APPENDIX B

### CRIMES CHARGED

TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE)

CONSPIRACY TO COMMIT TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE)

## COUNT 4: POSSESSION OF DRUG PARAPHERNALIA

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant had drug paraphernalia, grinders, a tanita scale, a pipe and a spoon, in his possession, with the intent to use the drug paraphernalia to process, prepare, test, ingest, inhale, or otherwise introduce into the human body, a controlled substance, contrary to § 30–31–25.1(A), NMSA 1978.

The names of the witnesses upon whose testimony this Indictment is based are as follows: Andrew M. Ortiz, BCSO.

I hereby certify that the foregoing Indictment is a true Bill.

_[]_____
Foreman

_6-18-97_____
Date

POSSESSION OF MARIJUANA (MORE THAN ONE OUNCE)

TAMPERING WITH EVIDENCE

POSSESSION OF DRUG PARAPHERNALIA

### GRAND JURY INDICTMENT

THE GRAND JURY CHARGES:

## COUNT 1: TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE)

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant intentionally had COCAINE, a narcotic drug which is a controlled substance, in her possession, with the intent to transfer it to another, knowing or believing it to be COCAINE, or believing it to be some drug or other substance the possession of which is regulated or prohibited by law, contrary to § 30–31–20(A)(3), NMSA 1978.

COUNT 2: CONSPIRACY TO COMMIT TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE)

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant and ANOTHER PERSON(S) by words or acts agreed together to commit TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE), and they intended to commit TRAFFICKING (BY POSSESSION WITH INTENT TO DISTRIBUTE) (COCAINE), contrary to § 30–28–2 and § 30–31–20(A)(3), NMSA 1978.

COUNT 3: POSSESSION OF MARIJUANA (MORE THAN ONE OUNCE)

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant intentionally had more than one ounce but less than eight ounces of marijuana, a controlled substance, in her possession, and the defendant knew it was marijuana, contrary to § 30–31–23, NMSA 1978.

COUNT 4: TAMPERING WITH EVIDENCE

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant ATTEMPTED TO DESTROY A SAFE AND THE CONTENTS OF A SAFE BY POURING ACID OVER AND INTO THE SAFE with intent to prevent the apprehension, prosecution or conviction of herself and/or another person, contrary to § 30–22–5, NMSA 1978.

COUNT 5: POSSESSION OF DRUG PARAPHERNALIA

That on or about the 13th day of December, 1996, in Bernalillo County, New Mexico, the above-named defendant had drug paraphernalia, grinders, a tanita scale, a pipe and a spoon, in her possession, with the intent to use the drug paraphernalia to process, prepare, test, ingest, inhale, or otherwise introduce into the human body, a controlled substance, contrary to § 30–31–25.1(A), NMSA 1978.

The names of the witnesses upon whose testimony this Indictment is based are as follows: Andrew M. Ortiz, BCSO.

I hereby certify that the foregoing Indictment is a true Bill.

APPROVED:

_[]_____
Foreman

_For Elliott Guttman_____
Assistant District Attorney

_6-18-97_____
Date

CASE INFORMATION

DA FILE# : 97–1226–02

MET. CT. # : unknown

LEA/RPT# : BCSO/96–566136

ADA: RICHARD BOWMAN/pas

DOB: 07–01–76

SS# : 585–41–0314

ADD: 6920 Roble Blanco SW/87105

DEF. ATTY:

ARR.# & Date: December 13, 1996

APPENDIX C

CRIMES CHARGED

FIRST DEGREE MURDER (WILLFUL AND DELIBERATE) (DEPRAVED MIND), SECOND DEGREE MURDER (FE), AND MANSLAUGHTER (FE); AGGRAVATED BATTERY (DEADLY WEAPON) (FE) (TWO COUNTS); SHOOTING AT OR FROM A MOTOR VEHICLE

(GREAT BODILY HARM)/OR IN THE ALTERNATIVE: SHOOTING AT A DWELLING OR OCCUPIED BUILDING (GREAT BODILY HARM); SHOOTING AT OR FROM A MOTOR VEHICLE (NO INJURY)/OR IN THE ALTERNATIVE: SHOOTING AT A DWELLING OR OCCUPIED BUILDING (NO INJURY); TAMPERING WITH EVIDENCE (TWO COUNTS); CONSPIRACY TO COMMIT TAMPERING WITH EVIDENCE (TWO COUNTS); POSSESSION OF A FIREARM OR DESTRUCTIVE DEVICE BY A FELON.

## *GRAND JURY INDICTMENT*

THE GRAND JURY CHARGES:

COUNT 1: FIRST DEGREE MURDER (WILLFUL AND DELIBERATE) (DEPRAVED MIND), SECOND DEGREE MURDER AND MANSLAUGHTER

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the above-named defendant did murder Orlando Ayon, Jr., with the deliberate intention to take away the life of Orlando Ayon, Jr. or any other human being, contrary to Section 30–2–1(A)(1), NMSA 1978; AND FURTHERMORE, the defendant is hereby notified that upon trial of this cause the finder of fact may be instructed to consider first degree murder (depraved mind), contrary to Section 30–2–1(A)(3) NMSA 1978 or murder in the second degree murder (firearm enhancement), contrary to Section 30–2–1(B) and 31–18–16, NMSA 1978, or manslaughter (firearm enhancement) contrary to Section 30–2–3 and 31–18–16 NMSA 1978.

COUNT 2: AGGRAVATED BATTERY (DEADLY WEAPON) (FE)

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the above-named defendant did touch or apply force to David Lopez with a firearm, which was a deadly weapon, intending to injure David Lopez, or another, and used a firearm, contrary to Section 30–3–5(A) & (C) and 31–18–16, NMSA 1978.

COUNT 3: AGGRAVATED BATTERY (DEADLY WEAPON) (FE)

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the above-named defendant did touch or apply force to Mandy Perales with a firearm, which was a deadly weapon, intending to injure Mandy Perales, or another, and used a firearm, contrary to Section 30–3–5(A) & (C) and 31–18–16, NMSA 1978.

COUNT 4: SHOOTING AT OR FROM A MOTOR VEHICLE (GREAT BODILY HARM)

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the defendant did willfully discharge a firearm at a motor vehicle with reckless disregard for the safety of another, causing great bodily harm to Orlando Ayon, Jr., contrary to Section 30–3–8, NMSA 1978.

OR IN THE ALTERNATIVE: SHOOTING AT A DWELLING OR OCCUPIED BUILDING (GREAT BODILY HARM)

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the defendant did willfully discharge a firearm at a dwelling or occupied building, causing great bodily harm to Orlando Ayon, Jr. contrary to Section 30–3–8, NMSA 1978.

COUNT 5: SHOOTING AT OR FROM A MOTOR VEHICLE (NO INJURY)

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the defendant did willfully discharge a firearm at a motor vehicle with reckless disregard for the person of another, contrary to Section 30–3–8, NMSA 1978.

OR IN THE ALTERNATIVE: SHOOTING AT A DWELLING OR OCCUPIED BUILDING (NO INJURY)

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the defendant did willfully discharge a firearm at a dwelling or occupied building, contrary to Section 30–3–8, NMSA 1978.

## COUNT 6: TAMPERING WITH EVIDENCE

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the above-named defendant hid a gun and an ammunition clip, with intent to prevent the apprehension, prosecution of conviction of himself, contrary to Section 30–22–5, NMSA 1978.

## COUNT 7: CONSPIRACY TO COMMIT TAMPERING WITH EVIDENCE

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the above-named defendant and another, by words or acts agreed to commit Tampering with Evidence, and they intended to commit Tampering with Evidence, contrary to Section 30–28–2 and 30–22–5, NMSA 1978.

## COUNT 8: TAMPERING WITH EVIDENCE

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the above-named defendant washed primer residue from his hands, and burned and buried clothing, with intent to prevent the apprehension, prosecution of conviction of himself, contrary to Section 30–22–5, NMSA 1978.

## COUNT 9: CONSPIRACY TO COMMIT TAMPERING WITH EVIDENCE

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the above-named defendant another by words or acts agreed to commit Tampering with Evidence, and they intended to commit Tampering with Evidence, contrary to Section 30–28–2 and 30–22–5, NMSA 1978.

## COUNT 10: POSSESSION OF FIREARM OR DESTRUCTIVE DEVICE BY A FELON

That on or about the 9th day of October, 1996, in Bernalillo County, New Mexico, the above-named defendant, who had been convicted of a felony within the preceding ten years, did receive, transport or possess a firearm, contrary to Section 30–17–16, NMSA.

The names of the witnesses upon whose testimony this Indictment is based are as follows:

C. Gandara APD
Jeffrey Padilla
Monica Padilla
Joey Otero
Mandy Perales

I hereby certify that the foregoing Indictment is a true Bill.

APPROVED:

_—[]_____
Foreman

_Daniel L. Tallon_____
Assistant District Attorney

_Sept, 3, 1997_____
Date

### CASE INFORMATION

DA FILE# : 97–2927–01

MET. CT. # :

LEA/RPT# : APD

ADA: DANIEL J. TALLON

DOB: 05–18–72

SS# : 585–33–7993

ADD: BERNALILLO COUNTY DETENTION CENTER

DEF. ATTY: MICHAEL VIGIL

ARR.# & Date: