IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2012-NMSC-038

Filing Date: October 22, 2012

Docket No. 33,136

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

WAYNE BENT

       Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Gerald E. Baca, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Petitioner

Law Works, L.L.C.
John A. McCall
Albuquerque, NM

for Respondent

## OPINION

**BOSSON, Justice.**

{1}    By the time Defendant was indicted, the grand jury allegedly had exceeded its statutory term of service.  Having been convicted subsequently of most of the charges in the indictment, Defendant appeals on the basis of that untimely indictment.  He claims that the untimely indictment deprived the grand jury of jurisdiction and that we should overturn the subsequent jury verdict against him because of that initial defect in the grand jury. Persuaded by this argument, our Court of Appeals reversed Defendant's convictions, in effect instructing the State to begin the criminal process all over again.  On certiorari we

1

assume without deciding that the indictment was issued late as Defendant alleges. We hold, however, that statutory challenges to the indictment like those presented here must be adjudicated before trial and before a verdict issues on those same charges. Accordingly, we reverse the Court of Appeals and remand to that Court for consideration of all other issues raised but not yet decided in Defendant's appeal.

**BACKGROUND**

**{2}** On May 20, 2008, Wayne Bent (Defendant) was indicted on two counts of criminal sexual contact of a minor and two counts of contributing to the delinquency of a minor. Defendant is the leader of a religious sect and has always maintained that any contact with the minors was innocent, and is part of a "healing ritual which the sect practiced" with all members, not just those under eighteen years of age.

**{3}** Soon after the indictment, Defendant filed a motion to quash the indictment, alleging, among other things, that the grand jury had ceased to exist by operation of law *before* handing down Defendant's indictment. Central to the motion to quash was NMSA 1978, Section 31-6-1 (1983), which states that "[a] grand jury shall serve for a period of no longer than three months." Significant to this issue, the sequence of dates is as follows.

**{4}** The grand jury process began when the district court entered an order dated October 3, 2007, requiring the court clerk to send a summons to 125 citizens of Union County. They were told to report to the courthouse on November 13, 2007, to begin grand jury duty for a term of three months. The record is unclear what, if anything, actually happened on November 13, 2007.

**{5}** Instead, the State claims that the "grand jury met for the first time" eight days later, on November 21, 2007, to consider unrelated criminal charges against another individual, although the citations to the record proper do not support any such claim. Both counsel agree, however, that after the completion of business on November 21, 2007, District Judge Sam Sanchez, presiding over the grand jury, orally extended the grand jury's term of service by another three months. Although there is no written record of that extension, neither party denies it. The grand jury did not meet again until six months later, May 20, 2008, when it heard evidence and issued the foregoing indictments against Defendant.

**{6}** In his motion to quash the indictment, Defendant challenged the court's authority to extend grand jury service in light of the statutory three-month limit provided in Section 31-6-1 ("grand jury shall serve for a period of no longer than three months"). As Defendant calculated, the grand jury's three-month term expired long before the indictment issued on May 20, 2008, and therefore, according to Defendant, the grand jury had no authority even to convene, much less indict, as of that date.

**{7}** After conducting a pre-trial hearing on the motion, District Judge Gerald Baca, assigned to preside over the criminal trial, declined to quash the indictment. Defendant filed

2

a motion for leave to file an interlocutory appeal, which was denied. Defendant filed no request with this Court for extraordinary relief, and the case proceeded to trial on the charges in the indictment.

**{8}** At trial, the jury convicted Defendant of one of the two counts of criminal sexual contact of a minor as well as the two counts of contributing to the delinquency of a minor. In his appeal to the Court of Appeals, Defendant raised multiple issues that are not before us now, as well as the one issue that is, namely, the authority of the grand jury to indict after its three-month term had expired.

**{9}** Addressing this one issue only, the Court of Appeals held that the indictment should have been quashed as a matter of law, and reversed all convictions. *State v. Bent*, 2011-NMCA-093, ¶ 24, 150 N.M. 561, 263 P.3d 903. The Court concluded that the grand jury's three-month statutory limit is mandatory and jurisdictional, and therefore, an indictment handed down after that time is "void ab initio." *Id.* ¶ 2.

**{10}** We granted certiorari, 2011-NMCERT-009, 269 P.3d 904, to consider an important issue of public policy that questions, first, the authority of the grand jury to indict, and second, whether that indictment can be challenged at this late date, *after* a petit jury has already convicted Defendant on the charges in the indictment. Because the Court of Appeals deferred action on the many other issues in Defendant's appeal, we limit our review to this one before us.

## DISCUSSION

**{11}** Article II, Section 14 of the New Mexico Constitution states that "[n]o person shall be held to answer for a capital, felonious or infamous crime unless on a presentment or indictment of a grand jury or information filed by a district attorney or attorney general or their deputies." While our Constitution makes general provisions for the grand jury, the three-month term of service derives solely from statute. Section 31-6-1.

**{12}** Both parties have made extensive arguments directed at the length of the grand jury's term in this instance. Those arguments include whether a district judge has authority to extend the statutory three-month term. If so, should that extension be limited to an incidental matter of a few hours or days, or can the term be extended for another three months, as appears to have occurred in this instance? Additionally, we are asked to decide whether the initial term begins either (a) when the initial order convening the grand jury is signed, or on the date potential grand jurors were told to initially report to the courthouse (both of which occurred over six months *before* the date of this indictment); or (b) whether the initial term begins on the date the grand jury actually convenes, in this case November 21, 2008, which is exactly six months before the date of the indictment.

**{13}** Although the parties raise meritorious questions, we need not decide them at this juncture. Instead, we assume, without deciding, that Defendant is correct, that the grand

3

jury's term of service had already expired by the time he was indicted. We do this because, in our view, the pivotal question is whether a procedural, statutory error in the grand jury proceedings arising from Section 31-6-1 can be raised and decided *after* a petit jury has already found Defendant guilty beyond a reasonable doubt. We proceed to an analysis of that specific issue.

**{14}**    On its face, Section 31-6-1 does not provide any remedy for its violation. *See State v. Apodaca*, 105 N.M. 650, 735 P.2d 1156 (Ct. App. 1987) (holding that portions of Section 31-6-1 are merely directory), *overruled on other grounds by State v. Garcia*, 110 N.M. 419, 796 P.2d 1115 (Ct. App. 1990). The statute sets forth the manner in which the grand jury is to be convened and how it will deliberate thereafter. Presumably, if the grand jury deviates from the statutory plan, the district court can order the statute enforced. In its entirety the statute states,

> [t]he district judge may convene one or more grand juries at any time, without regard to court terms. *A grand jury shall serve for a period of no longer than three months.* The district judge shall summon and qualify as a panel for grand jury service such number of jurors as he deems necessary. Each grand jury shall be composed of twelve regular jurors and a sufficient number of alternates to insure the continuity of the inquiry and the taking of testimony. All deliberations shall be conducted by any twelve jurors, comprised of regular jurors or substituted alternates. No more than twelve jurors may deliberate. No juror may vote on an indictment unless the juror has heard all evidence presented on the charge. The district judge may discharge or excuse members of a grand jury and substitute alternate grand jurors as necessary. The names of jurors summoned for grand jury service shall be drawn from the master jury wheel of the district court for the county.

Section 31-6-1 (emphasis added).

**{15}**    If this same question had come to us pre-trial, such as by way of an extraordinary writ, then this Court could have addressed the statutory term of the grand jury and quashed the indictment, if appropriate. *See State v. Ulibarri*, 1999-NMCA-142, ¶ 25, 128 N.M. 546, 994 P.2d 1164 (upholding pretrial quashing of indictment based on a violation of NMSA 1978, Sections 31-6-8 (1983) and 31-6-10 (1979) and Rule 5-506(B) NMRA (1999)), *aff'd* 2000-NMSC-007, 128 N.M. 686, 997 P.2d 818. We could have sent the matter back to the district court for a new grand jury proceeding, one conducted in full compliance with the statute. Faced with the challenge now, however, after a *petit jury* has already found Defendant guilty beyond a reasonable doubt of these same charges—as opposed to a grand jury finding of mere probable cause—we are compelled to recognize a prudential limit on the exercise of our appellate jurisdiction. In doing so, we first examine the fundamental purpose of grand juries in our criminal justice system.

**{16}**    The grand jury is one of the vestiges of early English common law, having been in

existence for over eight hundred years. *Buzbee v. Donnelly*, 96 N.M. 692, 695, 634 P.2d 1244, 1247 (1981). "Over the centuries in Great Britain, the grand jury not only served to discover and present for trial persons suspected of criminal wrongdoing, but also served to protect the citizens against oppressive actions by the Crown." *Id.*

{17} Today, the grand jury largely serves the same two functions. As our Court of Appeals has previously stated,

> [t]he modern institution of the grand jury serves two basic functions; both aptly described in UJI 14-8001 [NMRA (2008)]. One purpose of the grand jury "is to investigate the matter for which [it is] called and to determine from the evidence if there is probable cause to believe an offense has been committed." *Id.* On the other hand it is also the grand jury's "duty to protect citizens against unfounded accusations whether they come from the government or others, and to prevent anyone from being indicted through malice, hatred or ill will." *Id.*

*Ulibarri*, 1999-NMCA-142, ¶ 10 (second alteration in original). Similarly, the U.S. Supreme Court has characterized a grand jury's responsibilities to include "both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974). It is primarily the second of these responsibilities that concerns us here.

{18} Importantly, at least in this appeal, Defendant does not challenge the evidentiary basis for the grand jury's finding of probable cause that he committed the crimes alleged, he merely says the grand jury overstayed the statutory time limit. As a result, based on the present record, we must assume that the quantum of evidence against Defendant, having been enough to establish guilt beyond a reasonable doubt, is more than adequate to establish probable cause merely to accuse Defendant of these same crimes. Thus, if we were to quash the indictment now, the prosecutor would present the same evidence to a new grand jury, the grand jury would likely find probable cause, and Defendant would be re-indicted and retried. In short, reversal now, after a guilty verdict, would accomplish little because, based on this record, probable cause exists to bring these same charges against Defendant.

{19} And what of the second of the grand jury's responsibilities, that of protecting citizens from "unfounded accusations" and "unfounded prosecutions" and the reputational damage that can result? The grand jury can operate as a buffer against governmental overzealousness; it can decline to indict when not persuaded. For most citizens the mere accusation of a felony, such as those charged in this very case, can be ruinous to one's name and reputation even if the accused is eventually acquitted.

{20} Yet Defendant has already been indicted and convicted. Essentially, Defendant is asserting a right designed to protect against an unwarranted trial, not to avoid trial, but so

5

that he may suffer a second trial. Here again, because Defendant has brought this issue to us so late, even if we were to agree with him that the grand jury's term of service had expired, we cannot fashion a relief that would be consistent with the constitutional purpose of requiring a grand jury in the first place.

**{21}** At this point in the proceedings—post-conviction—there is simply no adequate remedy available for Defendant. In coming to this conclusion, we are guided by persuasive precedent, for this is not the first time our nation's courts have confronted a similar problem.

**{22}** In *United States v. Mechanik*, 475 U.S. 66, 71 (1986), the U.S. Supreme Court concluded,

> there is no simple way after the verdict to restore the defendant to the position in which he would have been had the indictment been dismissed before trial. He will already have suffered whatever inconvenience, expense, and opprobrium that a proper indictment may have spared him. In courtroom proceedings as elsewhere, "the moving finger writes; and, having writ, moves on." Thus reversal of a conviction after a trial free from reversible error cannot restore to the defendant whatever benefit might have accrued to him from a trial on an indictment returned in conformity with [procedural rules].

Like the court in *Mechanik*, we cannot spare Defendant the "inconvenience, expense, and opprobrium" that he has already suffered. Indeed, reversal based on error in the term of the grand jury would only guarantee him more of the same.

**{23}** The facts of *Mechanik* are instructive. In that case, the defendants were indicted by a federal grand jury on various drug and conspiracy charges. *Id.* at 67. More than a week after the trial began the defendants learned that two witnesses had testified in tandem before the grand jury while both were present, contrary to Federal Rule of Criminal Procedure 6(d), which states that "only specified persons including the witness under examination may be present at a grand jury proceeding." *Id.* (internal quotation marks omitted). Upon learning of the presence of the two witnesses, the defendants moved to dismiss the indictment, which was denied. *Id.* at 68.

**{24}** Later during trial, the presiding judge fell ill and was replaced. *Id.* The defendants then renewed their motion to quash which the new judge took under advisement. *Id.* Ultimately, the jury found the defendants guilty of the charges in the indictment. *Id.* After the guilty verdict, the new judge ruled that while Rule 6(d) had been violated, "a post-trial dismissal of the indictment would simply confer a windfall benefit on the defendants who stand convicted after a three-month trial . . . ." *Id.* at 69 (internal quotation marks and citation omitted). The Court of Appeals reversed, overturning the conviction and quashing the indictment. *Id.*

**{25}** The U.S. Supreme Court reversed the Court of Appeals, agreeing with the trial court.

6

While acknowledging that the defendants had been diligent in the pursuit of their claim, the Court held that "the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation." *Id.* at 73. The holding was based in part on the societal costs of reversing a conviction free from error during trial. *Id.* at 72. The Court noted the difference between errors that may have affected the verdict as opposed to other errors, stating that

> [t]hese societal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interest tips decidedly the other way when an error has had no effect on the outcome of the trial.

*Id.*

**{26}** In the present case, as in *Mechanik*, Defendant does not allege, nor could he, that this technical error with the grand jury "had [any] effect on the outcome of the trial." The error in *Mechanik*, unfair presentation of witnesses before the grand jury, arguably could have affected the indictment—unlike the technical error that occurred in this case—but in neither case did the error have any effect upon the conviction at trial.

**{27}** In each case a petit jury of twelve, concluded that the defendants were guilty beyond a reasonable doubt at the close of a trial free from any harmful effects of the errors that occurred in the grand jury proceedings. As in *Mechanik,* the petit jury's verdict against Defendant "rendered harmless any conceivable error in the charging decision." We agree with the U.S. Supreme Court that "[i]n such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings." *Id.* at 73.

**{28}** This is not the first time that this Court has stressed the importance of a timely challenge to grand jury proceedings. In *Jones v. Murdoch*, we created pre-indictment procedures, based on legislative intent, to resolve disputes between the target and the prosecutor over what potentially exculpatory evidence should be made available to the grand jury. 2009-NMSC-002, ¶ 42, 145 N.M. 473, 200 P.3d 523. In doing so, we stated that

> [w]hile some irregularities in a grand jury proceeding are subject to judicial review, . . . a post-indictment remedy [much less a post-conviction remedy] may be inadequate to cure the very real damage that an ill-advised indictment may inflict on a target's reputation even if the indictment is later dismissed or if the accused is innocent.

*Id*. ¶ 2. In that case the Attorney General also argued that a writ of superintending control was inappropriate because the petitioner had an adequate remedy on appeal. *Id.* ¶ 17. This Court responded by noting that "even if a target could successfully pursue the remedies

suggested by the Attorney General, they would all be post-indictment remedies and, as such, could not remedy the harm flowing from an unjustified indictment itself." *Id.* ¶ 18. We further stated:

> a wrongful indictment is no laughing matter; often it works grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public mind, the blot on a man's escutcheon, resulting from such a public accusation of wrongdoing, is seldom wiped out by a subsequent judgment of not guilty. Frequently, the public remembers the accusation, and still suspects guilt, even after an acquittal.

*Id.* (quoting *In re Fried*, 161 F.2d 453, 458-59 (2d Cir. 1947)). In short, *Jones v. Murdoch* made clear that there comes a point, as a practical matter, when issues with the grand jury can no longer be remedied.

**{29}** As in *Mechanik*, we, too, recognize that Defendant was diligent in the pursuit of his claim. He filed a motion to quash the indictment, which was denied. He applied to the district court for interlocutory appeal, which was also denied. Defendant failed, however, to take the next step which could have afforded him appropriate, meaningful relief; he failed to file a petition for an extraordinary writ with this Court.

**{30}** As stated previously, if Defendant had filed such a writ, this Court would have been in a position to review the matter before trial and, if appropriate, quash the indictment before a jury convicted him of the charges. We could have intervened, in the words of the *Mechanik* opinion, well before the "societal costs of reversal and retrial" had been incurred, and before the "balance of interests" had tipped "decidedly the other way."

**{31}** This Court has said in the past that extraordinary writs should not "be used as a substitute for a decision on direct or interlocutory appeal." *Chappell v. Cosgrove*, 1996-NMSC-020, ¶ 6, 121 N.M. 636, 916 P.2d 836. In that same case we reviewed the petition for extraordinary relief because "the relief available on direct appeal appear[ed] wholly inadequate." *Id.* The same would have been true here. We have stated numerous times that extraordinary relief is appropriate when "the remedy by appeal seems wholly inadequate . . . or where otherwise necessary to prevent irreparable mischief, great, extraordinary, or exceptional hardship [, or] costly delays and unusual burdens of expense." *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 624, 904 P.2d 1044, 1049 (1995) (alterations in original) (internal quotation marks and citation omitted) (quoting two previous New Mexico cases).

**{32}** We remind counsel that this Court has previously granted such relief in exactly this context—a problem with the grand jury proceedings brought to our attention before trial. In *Davis v. Traub*, this Court issued a writ of prohibition to prevent the district court from proceeding to trial on a faulty indictment and ordered the indictment quashed and charges dismissed. 90 N.M. 498, 501, 565 P.2d 1015, 1018 (1977). In so doing, this Court

recognized that

> [i]f all the defendants indicted by the grand jury are required to go to trial with these issues undecided serious miscarriages of justice may occur and expensive and needless jury trials take place causing useless expense to the taxpayers and subjecting the relator and other accused to fruitless and unnecessary trials.

*Id.* at 499, 565 P.2d at 1016 (quoting *State v. Dist. Ct. of First Jud. Dist.*, 220 P.2d 1035, 1039 (Mont. 1950)); *see also Ulibarri*, 1999-NMCA-142, ¶ 25 (quashing indictment pre-trial for failure to follow grand jury rules for presenting essential elements of the charged crimes).

**{33}** In its opinion on direct appeal, our Court of Appeals held that an indictment issued after the grand jury's term expired is void ab initio and deprives the trial court of jurisdiction to proceed to trial. *Bent*, 2011-NMCA-093, ¶ 2. Both Defendant and the Court of Appeals rely on *State v. Chacon*, 62 N.M. 291, 309 P.2d 230 (1957), for this position. In that case, a prosecution for burglary and grand larceny, the State filed charges by way of a criminal complaint, to which the defendant pleaded guilty, as opposed to an indictment or information as required by the Constitution. *Id.* at 291, 309 P.2d at 230. On appeal from a subsequent revocation of his suspended sentence, Defendant challenged the validity of his guilty plea because there had been no indictment or information as the state Constitution required. *Id.* at 293-94, 309 P.2d at 231-32. This Court agreed and held that the failure to follow the mandatory requirements of Article II, Section 14 of the New Mexico Constitution, requiring an indictment or information, denied "the court jurisdiction to accept the guilty plea and impose sentence on him." *Id.* at 294, 309 P.2d at 232.

**{34}** *Chacon* stands correctly for the proposition that in New Mexico a felony must be initiated by an indictment or information, or if not, the court does not acquire jurisdiction over the case. But, Defendant's reliance on *Chacon* in this case is misplaced. Here, the charges against Defendant were initiated by indictment as the Constitution requires. The grand jury heard evidence and determined there was probable cause to proceed against Defendant. Defendant was tried and convicted of the charges in the indictment. This is in stark contrast to *Chacon*.

**{35}** *Chacon* should be seen as a constitutional limit on the power of the court over criminal matters that must be initiated by an indictment or information. Beyond such specific limits, our constitution grants district courts "original jurisdiction in all matters and causes not excepted in this constitution." N.M. Const. art VI, § 13. The number of days in the term of a grand jury, being merely a matter of statute, goes not to the jurisdiction of the court—its fundamental power over the subject matter and the person of the accused—but to the manner in which that power is to be exercised. Improper exercise of that power may well be error, justifying judicial intervention as described earlier in this opinion, but it does not deprive the court of the very power to act that goes to the heart of jurisdiction.

9

**{36}** The view of jurisdiction taken by the Court of Appeals resembles more an artifact of a bygone era when courts took a hyper-technical, almost talismanic approach to the concept of subject matter jurisdiction. Any minor defect in a charging document could deprive the district court of the power to act. We have long since disavowed such a theory of jurisdiction. *See Sundance Mech. & Util. Corp. v. Atlas*, 109 N.M. 683, 690, 789 P.2d 1250, 1257 (1990) (holding that a defect in a civil complaint, even one required by statute, did not deprive the district court of jurisdiction). We have previously suggested as much in the criminal context. *See State v. Weiss*, 105 N.M. 283, 285-86, 731 P.2d 979, 981-82 (Ct. App. 1986) (holding that an indictment returned after normal business hours in violation of NMSA 1978, Section 31-6-4(A) (2003) was a mere technical violation of grand jury procedures); *Apodaca*, 105 N.M. 650, 653, 735 P.2d 1156, 1159 (holding that a failure to follow statutory procedures for replacing a grand juror with an alternate did not require post-trial dismissal of the indictment). Accordingly, we disavow any use of a jurisdictional analysis for what amounts to a statutory error in how the grand jury conducted its business.

**{37}** Finally, we observe that the district court is not without its share of blame in this case. When it presided over the grand jury, the district court created a cloud of uncertainty over the grand jury's term of service. Then, relying on *Apodaca* to justify its denial of post-indictment relief, the district court failed to recognize that *Apodaca* was dealing with, as we do here, the appropriate *post*-conviction remedy for a violation of Section 31-6-1. This does not mean that the grand jury statute can be disregarded in a situation pre-trial, as presented here, that could have been easily remedied.

**{38}** Additionally, the district court should have granted an interlocutory appeal. This kind of issue—one that cannot be remedied on direct appeal—is most appropriate for resolution before trial, for the reasons discussed earlier. Proper pre-trial management would have permitted this issue to be properly vetted before our appellate courts, in time for appropriate relief.

**CONCLUSION**

**{39}** We reverse the Court of Appeals and remand to the Court of Appeals for further consideration of the remaining issues Defendant raised on appeal.

**{40}** **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**PAUL J. KENNEDY, Justice**

**Topic Index for *State v. Bent*, No. 33,136**

**APPEAL AND ERROR**
Interlocutory Appeal
Remand
Timeliness of Appeal

**CONSTITUTIONAL LAW**
New Mexico Constitution, General

**CRIMINAL LAW**
Contributing to the Delinquency of a Minor
Sexual Exploitation of Children

**CRIMINAL PROCEDURE**
Grand Jury
Indictment
Verdict

**JURISDICTION**
Appellate Jurisdiction
District Court
Subject Matter