## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:  2014-NMSC-005**

**Filing Date:  December 30, 2013**

**Docket No. 34,018**

**ENRIQUE DE LEON,**

**Petitioner,**

**v.**

**HON. TEDDY L. HARTLEY,**

**Respondent,**

**and**

**STATE OF NEW MEXICO,**

**Real Party in Interest.**

**ORIGINAL PROCEEDING**

Chavez Law
Kirk C. Chavez
Clovis, NM

for Petitioner

Gary K. King, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

for Respondent

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Santa Fe, NM

for Real Party in Interest

1

## OPINION

**BOSSON, Justice**

**{1}** On the eve of his trial, Defendant petitioned this Court for a writ of superintending control that would direct the district court to quash his indictment because of irregularities in the selection of his grand jury. Agreeing with Petitioner that the integrity of the grand jury process was undermined by the manner in which grand jurors had been selected in this case, we issued a writ of superintending control directing the district court to quash the indictment without prejudice to the State's right to reinstate new criminal proceedings against Petitioner. We now issue this opinion to explain the reasons for our decision to quash the indictment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**{2}** Petitioner filed a motion to quash his indictment arguing that the district court improperly enlisted the aid of the district attorney's office in the selection of the grand jury panel that indicted Petitioner. Before ruling on the motion, the district court held an evidentiary hearing to take testimony concerning the process that was used for the selection of the grand jury.

**{3}** The testimony before the district court revealed that the initial convening of potential grand jurors began with the receipt by the district court of a list of 100 potential grand jurors generated through a randomized process in Santa Fe, New Mexico. Upon receipt of the list of potential grand jurors, the district court jury clerk testified that she deleted some names from the list based upon hardship reports she received. Those remaining on the list were convened by the district court grand jury judge on July 6, 2011, for an orientation session and to be sworn in. After the initial orientation and swearing in of the grand jurors, the process of selecting and excusing jurors for individual grand jury sessions was transferred to the district attorney's office with no apparent further involvement by the district court.

**{4}** For its part, a staff member of the district attorney's office testified that she received from the district court the list of those grand jurors who were sworn in at the July 6, 2011, orientation session and used that list to call prospective grand juror members to appear at sessions of the grand jury scheduled and conducted by the district attorney's office. The district attorney staff member also testified that she accepted phone calls and voice mail messages from potential grand jurors who indicated they would not be able to attend scheduled sessions. She further testified that she would only register the receipt of such information to note that certain jurors would not be present and would advise the district attorney of those instances. But the staff member testified that at no time did she excuse any prospective jurors or make any comment to prospective or selected grand jurors about the cases that were to be presented to the grand jury.

**{5}** While the staff member denied any involvement in excusing grand jurors, the list of

2

those grand jurors who were called for the session of the grand jury that indicted Petitioner reflects that several grand jurors were excused—though by whom is unclear. Indeed, the list of grand jurors used by the district attorney's office contains many notations suggesting active involvement by someone within the district attorney's office in deciding who would ultimately serve at the session of the grand jury that indicted Petitioner.

{6} Despite the role that the district attorney's office played in convening the grand jury that indicted Petitioner, the district court found that there was no fraud or prejudice to Petitioner in the conduct of the grand jury proceeding that resulted in his indictment. The district court therefore denied Petitioner's motion to quash the indictment. Two days later Petitioner filed a motion with the district court asking that its order denying the motion to quash the indictment be certified for interlocutory appeal, which the district court also denied. Almost nine months later, Petitioner renewed his motion for interlocutory appeal based on an opinion this Court had issued just a few weeks before. *See State v. Bent*, 2012-NMSC-038, 289 P.3d 1225. But once again, the district court denied Petitioner's motion for an interlocutory appeal.

{7} Left with no other options for review of the district court's order denying his motion to quash the trial and on the eve of his trial based on that indictment, Petitioner filed his petition for a writ of superintending control with this Court. While the writ we issued directing the district court to quash the indictment provided Petitioner with all the relief to which he was entitled, we issue this opinion now to explain why the grand jury selection process used in this case was inappropriate and to also reiterate the need for correcting grand jury irregularities promptly brought to the attention of the district court before a matter goes to trial.

## II. THE PROPER FUNCTIONING OF THE GRAND JURY REQUIRES THE DISTRICT COURT TO MAINTAIN COMPLETE CONTROL OVER THE SELECTION OF GRAND JURORS

{8} As this Court has previously recognized, the grand jury is not simply a tool of the prosecution. *See Jones v. Murdoch*, 2009-NMSC-002, ¶ 12, 145 N.M. 473, 200 P.3d 523 (cautioning against conflating "the role of the prosecuting attorney as an aide to the grand jury with the role of the grand jury itself" and noting that the grand jury is not an arm of prosecution). The grand jury does, of course, serve as one method for initiating criminal proceedings against someone accused of a crime. *See* N.M. Const. art. II, § 14 (providing that "[n]o person shall be held to answer for a capital, felonious or infamous crime unless on a presentment or indictment of a grand jury or information"). But as a constitutional entity distinct from the district attorney, the grand jury plays an important role in serving to buffer against unfounded accusations. *See State v. Ulibarri*, 1999-NMCA-142, ¶ 10, 128 N.M. 546, 994 P.2d 1164 (noting the duty of the grand jury to protect citizens against unfounded accusations), *aff'd on other grounds,* 2000-NMSC-007, 128 N.M. 686, 997 P.2d 818; *see also United States v. Calandra*, 414 U.S. 338, 343 (1974) (recognizing that the grand jury is responsible for protecting citizens from unfounded criminal prosecutions).

3

Some may question the degree to which the grand jury truly is able to serve as a check on an overzealous prosecutor, even when the system operates as it should. But if the grand jury is to play any role at all as a credible, independent entity charged with determining whether the prosecution has probable cause to go forward with criminal charges against the accused, the grand jury must remain free of the taint that would come from being perceived to be under the complete and absolute control of the prosecutor.

{9}     Notwithstanding the necessarily close relationship between the prosecutor and grand jury, our state constitution has assigned the district court judge the responsibility for convening the grand jury as prescribed by law. *See* N.M. Const. art. II, § 14. And in keeping with that constitutional command, our Legislature has recognized the need for maintaining some degree of separation between the grand jury itself and the prosecution by providing for the district court's direct involvement in the entire process of assembling the grand jury. *See* NMSA 1978, § 31-6-1 (1983). For example, as required by the constitution, it is the district court who "may convene one or more grand juries at any time, without regard to court terms." *Id.* It is also the district court who "shall summon and qualify as a panel for grand jury service such number of jurors as [the court] deems necessary." *Id.* And finally, it is the district court who "may discharge or excuse members of a grand jury and substitute alternate grand jurors as necessary." *Id.* Nowhere in that process is it the prerogative of the district attorney to decide who shall serve as a grand juror and who may be excused from service.

{10}     In his response to Petitioner's motion to quash the indictment, the district attorney made much of a provision in NMSA 1978, § 31-6-7(A) (2003), which provides that "[t]he district court shall assign necessary personnel to aid the grand jury in carrying out its duties." Because the district court has supervisory control over the grand jury, *see* Rule 5-302A(F)(1) NMRA, we have no quarrel with a statutory provision recognizing the duty of the district court to ensure that the grand jury has the staff support it needs to carry out its functions. We also recognize the role the district attorney plays in assisting the grand jury once it is seated to decide on particular indictments. But we completely disagree with the notion that Section 31-6-7(A) authorizes the district court to assign personnel outside of the court to carry out the district court's own supervisory responsibilities over the grand jury.

{11}     It is for the district court, and the district court alone, to decide who shall serve as grand jurors. To permit the district attorney to take over that role is to sacrifice any perception that the grand jury is an entity distinct from the prosecutor that is capable of serving as a barrier against unwarranted accusations. We therefore reject any interpretation of Section 31-6-7(A) that would allow the district court to delegate its supervisory role over the selection of the grand jury to the district attorney's office.

III.    **THE INDICTMENT MUST BE QUASHED BECAUSE PETITIONER PROMPTLY BROUGHT THE DEMONSTRATED IRREGULARITY IN THE SELECTION AND EXCUSAL OF GRAND JURORS TO THE ATTENTION OF THE COURT WELL IN ADVANCE OF TRIAL**

4

**{12}**     Allowing the district attorney to play such a pivotal role in the selection of grand jury panels was condemned twenty-six years ago by our Court of Appeals. *See State v. Apodaca*, 1987-NMCA-033, ¶ 18, 105 N.M. 650, 735 P.2d 1156 (refusing to "condone the practice of prosecutors discharging grand jurors or selecting alternates"), *overruled on other grounds by State v. Garcia*, 1990-NMCA-065, ¶¶ 8, 12, 110 N.M. 419, 796 P.2d 1115. So it is no small irony that the district court actually relied on *Apodaca* to deny Petitioner's motion to quash the indictment since the district court found no showing of fraud or prejudice related to the manner in which Petitioner's grand jury was selected. But as we recently explained in *Bent*, 2012-NMSC-038, ¶ 37, the Court of Appeals in *Apodaca* was dealing with the appropriate remedy for a grand jury irregularity brought to its attention after the defendant was already convicted. In such circumstances, it may well make sense to require a showing of fraud or prejudice before a conviction resulting from an error-free trial is nonetheless overturned because of an irregularity at the grand jury stage. But here, the accused challenged the grand jury proceeding in a timely manner before trial. Indeed, it is difficult to imagine what more Petitioner could have done given that he filed his motion to quash the indictment almost immediately after being indicted and twice asked the district court to permit an interlocutory appeal of the issue.

**{13}**     In light of the language in *Apodaca* suggesting that the statutory provisions for excusing grand jurors are merely directory, it is certainly understandable why the district court declined to grant relief by focusing on whether Petitioner had established fraud or prejudice flowing from the district attorney's involvement in the actual selection or excusal of the grand jurors who indicted Petitioner. While *Apodaca* did not condone the practice of prosecutors becoming involved in the process of selecting grand jurors, the Court of Appeals nonetheless refused to reverse the district court's decision not to dismiss the indictment because there was "no showing of actual prejudice suffered by defendant." *Apodaca*, 1987-NMCA-033, ¶ 18. The Court of Appeals reached that conclusion because it had already determined, relying on *State v. Gunthorpe*, 1970-NMCA-027, 81 N.M. 515, 469 P.2d 160, that the statutory provisions for selecting and excusing grand jurors were directory rather than mandatory. *Id.* ¶¶ 9-10. We question, however, *Apodaca*'s reliance on *Gunthorpe* to characterize the district court's statutory role in selecting and excusing jurors as merely directory.

**{14}**     In *Gunthorpe*, the Court was only dealing with the method by which the district court selected and excused grand jurors. And it bears emphasizing that it was the district court itself who was deciding whom to select and excuse. As such, we believe the Court of Appeals in *Gunthorpe* was correct to characterize the statutory procedures by which the district court was to choose grand jurors as merely directory because there was no question that the process used by the district court did not compromise the impartiality of the proceeding nor did it expose the process to the possibility of unfair influences. *See Gunthorpe*, 1970-NMCA-027, ¶ 9 (recognizing that "'[s]tatutory provisions which relate to the number and qualifications of jurors, or which are designed to secure impartiality or freedom from unfair influences, are ordinarily deemed to be mandatory; while those which prescribe mere details as to the manner of selection or drawing are usually regarded as

5

directory'" (quoting 4 Ronald A. Anderson, *Wharton's Criminal Law and Procedure*, § 1698 (1957))).

**{15}** In contrast, *Apodaca* was addressing a situation in which the district court had transferred its oversight of the selection process to the district attorney. The Court of Appeals viewed the relevant statutes as directory because they "merely provide details as to the procedure to be followed in selecting grand jurors." *Apodaca*, 1987-NMCA-033, ¶ 18. While *Apodaca* relied on *Gunthorpe* to characterize the district court's role as merely directory, we disagree with that conclusion. The entity charged with the actual selection and excusal of grand jurors is of paramount importance to the process. As such, the statutory provisions assigning that role to the district court should be seen as mandatory, not directory, because they are critical to ensuring that the process of impaneling a grand jury is impartial and free of unfair influences. *See Gunthorpe*, 1970-NMCA-027, ¶ 9.

**{16}** Given the mandatory nature of the district court's role in selecting grand jurors, we disagree with the assessment in *Apodaca* that the district court was correct in refusing to quash the indictment in the absence of an actual showing of fraud or prejudice by the accused. While the result in *Apodaca* was correct because the irregularities in the grand jury process had been rendered moot by the error-free trial that resulted in the defendant's conviction, *see Bent*, 2012-NMSC-038, ¶ 37, when the improper involvement of the district attorney in the excusal of grand jurors is brought to the attention of the district court well before trial is set to begin the district court should take steps to remedy the irregularity irrespective of whether any actual fraud or prejudice is established when the improper involvement of the district attorney in the excusal of grand jurors is brought to the attention of the district court. To the extent that *Apodaca* can be read to suggest otherwise, it should not be followed.

**{17}** The manner in which grand jurors are selected and excused goes to the very heart of how the public views the integrity of the grand jury system. The fact that anyone even casually acquainted with our grand jury system has heard of the indictment of the proverbial ham sandwich demonstrates the need to enforce those few provisions that ensure at least some degree of separation between the prosecutor and the grand jury. *U.S. v. Laurent,* 86 F. Supp. 2d 71, 89-90 (E.D.N.Y. 2011) (restating the 1985 public summary by the Chief Judge of New York State "that a grand jury would indict a 'ham sandwich' if asked to do so by the prosecutor"). While there was no evidence presented in this case that the district attorney abused the control that he had over the selection and excusal of those grand jurors who ultimately indicted Petitioner, it would have been an almost insurmountable burden for Petitioner given that there was virtually no record made of the informal excusal process that the district attorney apparently used. And as explained above, the district court's reliance on *Apodaca* to require such a showing of prejudice by Petitioner, while understandable, was misplaced. Petitioner having established that the district attorney was in control of the actual selection and excusal of the grand jurors and having brought that fact to the attention of the district court well before trial, the district court should have quashed the indictment and erred by refusing to do so.

6

**{18}** While the selection of grand jurors can be a straightforward process, the important role the district court has to play in that process should not be minimized. Delegating the selection and excusal of grand jurors to the prosecution only invites suspicion and guarantees challenges to a process that must be above reproach. We will not countenance a process that causes the diversion of scarce resources to investigate a process that can be easily structured to avoid even the hint of prosecutorial overreaching. The informality that may often accompany the process of excusing grand jurors at the last minute who present a compelling enough reason for not attending a particular session of the grand jury, is exactly why the district court—not the district attorney—must oversee the process.

**{19}** The district court is the constitutionally and statutorily designated neutral entity that is assigned the responsibility for determining which grand jurors sit in any particular case to decide the question of indictment. Without the district court actively involved in the entire grand jury process, public confidence in the integrity of the process is at risk. And if the integrity of the grand jury is called into question, there is little hope that the public at large, or the accused in particular, will view the grand jury as capable of returning well-founded indictments or serving as a realistic barrier to an overzealous prosecution.

**{20}** We therefore reiterate that the district courts in this state must not delegate their core supervisory responsibilities over grand jury proceedings. And when undeniable irregularities in the grand jury process are brought to the court's attention well in advance of trial, as was the case here, a grand jury indictment resulting from that flawed process must be quashed.

**{21}   IT IS SO ORDERED.**

 

 
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

 

**CHARLES W. DANIELS, Justice**

 

**BARBARA J. VIGIL, Justice**

**Topic Index for _De Leon v. Hartley_, No. 34,018**

**APPEAL AND ERROR**
Interlocutory Appeal
Prejudicial Error

**CRIMINAL PROCEDURE**
Grand Jury

Indictment
Prejudice
Quashing of Indictment

**REMEDIES**
Writ of Superintending Control