IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-018

Filing Date: June 12, 2014

Docket No. 34,355

AMY HERRERA,

Petitioner,

v.

HON. ROSS C. SANCHEZ,
SECOND JUDICIAL DISTRICT JUDGE,

Respondent,

and

STATE OF NEW MEXICO,

Real Party in Interest.

ORIGINAL PROCEEDING

D. Eric Hannum, Esq.
Lupe Preciado, Esq.
Albuquerque, NM

for Petitioner

Gary K. King, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

for Respondent

Gary K. King, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

for Real Party in Interest

1

**OPINION**

**MAES, Justice.**

**{1}** After her indictment for second-degree murder, but prior to trial, Petitioner Amy Herrera sought a writ of mandamus from this Court directing the district court to dismiss the indictment. Petitioner contends that the prosecuting attorney assisting the grand jury failed to adhere to certain structural protections of our grand jury statutes that are critical to the integrity of our grand jury system. Specifically, Petitioner argues that the prosecutor prevented the grand jury from inquiring into the facts demonstrating probable cause and failed to act in a fair and impartial manner when instructing the grand jury. We agree that the manner in which the prosecutor conducted the grand jury proceedings warrants dismissal of the indictment. We therefore issued a writ of mandamus directing the district court to dismiss the indictment without prejudice to the State's right to bring new criminal charges against Petitioner. In this opinion we discuss our reasons for issuing the writ.

**BACKGROUND**

**{2}** On July 1, 2012, Petitioner's husband Marc Herrera died at home from a single gunshot wound to the face. Police initially treated the shooting as a suicide. Several months later the death was determined to be a homicide, and Petitioner was charged by criminal complaint with an open count of murder.

**{3}** The assistant district attorney decided to present the case to the grand jury for a determination of probable cause. Petitioner therefore became the target of a grand jury investigation. A week before the grand jury was scheduled to convene, Petitioner's attorney delivered a letter to the assistant district attorney who would be prosecuting the case, requesting that the prosecuting attorney alert the grand jury to a variety of evidence that Petitioner deemed exculpatory. The letter included a request that the grand jury be alerted to potential witness testimony from Petitioner's friend Elizabeth Downs. As explained in the letter,

> Ms. Herrera asks that the grand jury be allowed to hear the testimony of Elizabeth Downs. Ms. Downs is a friend to whom Ms. Herrera had confided that her husband, decedent Marc Herrera, had previously attacked her and threatened to kill her. Ms. Downs will testify that she and Ms. Herrera had discussed an "escape plan" for Ms. Herrera in the event that she felt it was too dangerous to stay in her home with Marc Herrera. Ms. Downs will testify that several weeks before the incident, she had given Ms. Herrera a key to her home to use whenever she felt too frightened by her husband to return to her own home. This evidence will support a finding of self-defense by showing the reasonableness of Ms. Herrera's ongoing fear for her own safety.

2

**{4}**     The State filed a motion to preclude much of Petitioner's requested evidence, including the potential witness testimony from Ms. Downs. The grand jury judge granted the motion in part. He redacted portions of Petitioner's letter, including the paragraph about Ms. Downs, and attached the modified letter to an order stating "the Grand Jury shall only be advised of the parts of the Letter . . . which have not been redacted." The order explained that parts of the letter had been redacted because they contained "argumentative assertions or . . . legal conclusions."

**{5}**     The assistant district attorney presented the State's case to a grand jury. The grand jury heard testimony from two witnesses, Detective Holly Anderson from the Albuquerque Police Department and Petitioner. Detective Anderson testified first, describing the events that occurred on the night of the shooting and her subsequent investigation of the case.

**{6}**     Petitioner testified after Detective Anderson. Petitioner began,

> Well, I think there's a lot that you need to know to make this—well, to make a good decision here today. First of all, I know you didn't know Mar[c], you don't know me, but I'm hoping to give you enough information. Feel free to ask me any questions any time.

Petitioner then gave her account of the events that occurred on the night of the shooting. Petitioner and her husband had been hosting a party at their house for a group of foreign exchange students. At about 3:00 a.m., after an evening of drinking, dancing, and games, everyone was preparing for bed when Marc, intoxicated, pointed a gun at one of the students. Petitioner asked Marc to put the gun away, told Marc it was time for bed, and walked into the couple's bedroom. Marc followed her. Petitioner testified that Marc pushed her down in the bedroom closet, got on top of her with the gun, and put the gun in her face. Petitioner stated she was "absolutely sure" he was going to shoot her, but then he put the gun in his own mouth. Marc placed the gun in Petitioner's hands, saying she "was going to do it," and she pulled the trigger.

**{7}**     After Petitioner testified, the prosecuting attorney questioned Petitioner as follows:

> [ASSISTANT DISTRICT ATTORNEY]: Okay. Now, initially, you told a couple of different people that Mar[c] shot himself; is that true?
> MS. HERRERA: On the phone, yeah.
> [ASSISTANT DISTRICT ATTORNEY]: Okay. But now you're saying that you shot him?
> MS. HERRERA: Yes.
> [ASSISTANT DISTRICT ATTORNEY]: Okay. Because you're—you were scared?
> MS. HERRERA: Terrified.
> [ASSISTANT DISTRICT ATTORNEY]: Okay. But you didn't tell anyone at the scene that he had—that you were terrified?

MS. HERRERA: You know, there was a past of violence in our relationship and I was really accustomed to lying for him.

[ASSISTANT DISTRICT ATTORNEY]: But you never reported anything to anyone, to law enforcement?

MS. HERRERA: Because he was threatening me.

[ASSISTANT DISTRICT ATTORNEY]: But you never reported it?

MS. HERRERA: No.

{8}     The prosecuting attorney proceeded to ask whether the grand jurors had any questions for Petitioner. One of the grand jurors asked Petitioner questions. Petitioner answered the grand juror's questions until the prosecuting attorney halted her testimony, as follows:

GRAND JUROR: Was he physically abusive to you?

MS. HERRERA: Yes, he was, on several occasions.

GRAND JUROR: Did you ever go to the hospital?

MS. HERRERA: Not to the hospital, no. He was a highly trained black ops pilot in the Air Force. One time that he choked me, he made a point to show that he was going to crush my windpipe because it wouldn't leave any marks, and that they had trained him to do that correctly.

GRAND JUROR: Did you ever tell anyone else that that kind of thing was going on?

MS. HERRERA: Yes, I did tell my friend Elizabeth Downs at work. I actually had created an escape plan for myself that June because—

[ASSISTANT DISTRICT ATTORNEY]: So, I'm going to stop her.

MS. HERRERA: —it was escalating.

[ASSISTANT DISTRICT ATTORNEY]: Unfortunately, that—the information that she's providing you has—is not relevant to this proceeding at the moment. Are there any other questions for her?

The grand jurors asked no additional questions, and Petitioner left the grand jury room.

{9}     Before releasing the grand jurors to deliberate, the prosecuting attorney gave them some final jury instructions. The prosecuting attorney began with two instructions modeled on our Uniform Jury Instructions that explain how the grand jury should evaluate witness credibility and opinion testimony:

Credibility. You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each. In deterring [sic] the credit to be given any witness, you should take into account the witness' truthfulness or untruthfulness, ability and opportunity to observe, manner—to observe, memory, manner while testifying, and interests, bias, or prejudice the witness may have, and the reasonableness of the witness' testimony considered in the light of all the evidence.

4

Opinion testimony. You should consider each opinion received in evidence in this case and give it such weight as you think it deserves. If you should conclude that the reasons given in support of the opinion are not sound or for that—or that for any other reason the opinion is not correct, you may disregard it.

*See* UJI 14-5020 NMRA (Credibility of witnesses); UJI 14-5050 NMRA (Opinion testimony). The prosecuting attorney then told the grand jury,

You must not concern yourself with the consequences of the verdict. She told you to—to come to the correct conclusion. She was directly appealing to you to consider the consequences of your verdict. That is absolutely inappropriate. Please do not let anything she said to you about, you know, implying what the right decision is influence your decisions. She was improperly seeking your sympathy.

The prosecuting attorney followed this admonition with one final instruction modeled on our Uniform Jury Instructions:

You are the sole judges of the facts. It is your duty to determine the facts from the evidence produced here. Your verdict should not be based on speculation, guess, or conjecture. Neither sympathy nor prejudice should influence your verdict. You are to apply the law as stated in these instructions to the facts as you find them, and in this way decide the case.

*See* UJI 14-6006 NMRA (Jury sole judge of facts; sympathy or prejudice not to influence verdict). The prosecuting attorney then released the grand jury to deliberate, and the grand jury indicted Petitioner for second-degree murder. Petitioner sought to challenge the indictment.

**{10}** A target of a grand jury investigation has several avenues for challenging the manner in which grand jury proceedings have been conducted. The target may file a motion to quash the indictment in the district court, apply for an interlocutory appeal, or file a petition for an extraordinary writ with this Court. *See State v. Bent*, 2012-NMSC-038, ¶ 29, 289 P.3d 1225. Whichever avenue the target pursues, such challenges should be raised before trial because a petit jury's finding at trial of guilt beyond a reasonable doubt typically will moot any post-conviction challenges to the grand jury's determination of probable cause. *See id*. ¶¶ 18, 21 (declining to quash an indictment post-trial because the evidence against the defendant was "enough to establish guilt beyond a reasonable doubt" and would therefore be more than adequate to establish the probable cause necessary to retry the defendant).

**{11}** In this case, Petitioner moved the district court to dismiss the indictment prior to trial. Petitioner argued that "the prosecutor aiding the grand jury did not act in a fair and impartial manner, overrode the independence of the grand jury, and improperly instructed the grand

jury to disregard [Petitioner's] testimony." The State filed a response, asserting that Petitioner was not entitled to relief because she had failed to show prejudice or prosecutorial bad faith. The trial judge, Second Judicial District Judge Ross Sanchez, denied the motion. Petitioner then sought a writ of mandamus and superintending control from this Court to compel the district court to rescind the order denying her motion to dismiss and to enter an order dismissing the indictment without prejudice. Our jurisdiction to issue a writ of mandamus to a district court judge stems from Article VI, Section 3 of the New Mexico Constitution, which grants this Court "superintending control over all inferior courts" and the "power to issue writs of mandamus." N.M. Const. art. VI, § 3.

## DISCUSSION

### Standards for Reviewing Challenges to Grand Jury Proceedings

{12}    Challenges arising from grand jury proceedings ordinarily fall into two categories: (1) challenges to the quality or sufficiency of the evidence before the grand jury and (2) structural challenges involving the manner in which the grand jury process has been conducted. *See State v. Ulibarri*, 1999-NMCA-142, ¶¶ 12-13, 128 N.M. 546, 994 P.2d 1164, *aff'd*, 2000-NMSC-007, 128 N.M. 686, 997 P.2d 818.

{13}    A target's ability to challenge the sufficiency of the evidence before the grand jury generally is limited to the review permitted by statute. *See State v. Chance*, 1923-NMSC-042, ¶ 8, 29 N.M. 34, 221 P. 183 (holding that courts cannot review the sufficiency of the evidence underlying an indictment "unless there is some clear statutory authority to do so"). Under NMSA 1978, Section 31-6-11(A) (2003), "[t]he sufficiency of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury." In accordance with this statute, our courts will not entertain a target's challenge to the quality or sufficiency of the evidence presented to the grand jury unless the target demonstrates prosecutorial bad faith. *See, e.g.*, *State v. Gallegos*, 2009-NMSC-017, ¶¶ 9-11, 146 N.M. 88, 206 P.3d 993.

{14}    A different standard applies to a target's claim that grand jury proceedings have been conducted in violation of the laws governing the grand jury process. Our courts view these challenges differently because our grand jury statutes provide structural protections that safeguard the grand jury's ability to perform its constitutional function. *See generally* NMSA 1978, §§ 31-6-1 to -15 (1969, as amended through 2003). Under Article II, Section 14 of the New Mexico Constitution, the State may prosecute a person for a "capital, felonious or infamous crime" only after obtaining a neutral determination of probable cause. *See State v. Lopez*, 2013-NMSC-047, ¶ 2, 314 P.3d 236. To obtain such a determination, the district attorney may either present the case to a grand jury and seek an indictment or proceed with a preliminary examination before a judge and file a criminal information if the judge finds probable cause to prosecute. *See id.*

**{15}** When the State proceeds by indictment, the grand jury serves two primary functions: (1) to determine whether there is probable cause to believe that the target of an investigation has committed a crime and (2) to protect innocent citizens from hasty, malicious, or arbitrary prosecutions. *See Ulibarri*, 1999-NMCA-142, ¶ 10. The grand jury sits without direct supervision from the grand jury judge and fulfills its constitutional responsibilities with help from a prosecuting attorney, who serves as an aide to the grand jury. *See* § 31-6-7(A). The prosecutor calls witnesses, examines those witnesses, and instructs the grand jury on the law and the application of the law. *Id.* If the prosecutor does not strictly adhere to the grand jury statutes and procedural rules designed to protect the target's rights and ensure the fundamental fairness of the proceeding, the structural integrity of the grand jury process is compromised, along with the grand jury's determination of probable cause. *See Baird v. State*, 1977-NMSC-067, ¶ 6, 90 N.M. 667, 568 P.2d 193 ("[S]tatutes governing grand jury proceedings [are] to be rigorously observed and strictly enforced."); *see also Davis v. Traub*, 1977-NMSC-049, ¶ 5, 90 N.M. 498, 565 P.2d 1015 (per curiam) (explaining that this Court "will not permit anyone to circumvent the letter or the spirit" of the laws that enable the grand jury to guard "the citizens' right to be free from government harassment").

**{16}** While the prosecuting attorney plays a central role in the grand jury process, the target's participation is confined to testifying, if the target chooses to do so, *see* § 31-6-11(C)(3)-(5), and to asking the prosecuting attorney to alert the grand jury to exculpatory evidence and possible defenses, *see* § 31-6-11(B). Grand jury proceedings are conducted in secret, and the target and the target's attorney are permitted to be present only if and when the target testifies. *See* § 31-6-4(B)-(D). The target's attorney may not participate in the proceedings—except to advise the target—and may not speak in a manner that is audible to the grand jurors. *See* § 31-6-4(D). In these respects a grand jury proceeding is markedly different from a preliminary examination conducted before a judge, in which the defendant plays an active, adversarial role. For example, at a preliminary examination the defendant is permitted to be present with counsel throughout the duration of the proceedings, to cross-examine the State's witnesses, and to call and subpoena witnesses on the defendant's own behalf. *See generally* Rule 5-302 NMRA.

**{17}** Because grand jury proceedings are conducted by a prosecutor acting under the indirect supervision of the grand jury judge, we rely on the structural protections of the grand jury statutes and procedural rules to preserve the target's rights and the integrity of the grand jury process. If the target of a grand jury investigation establishes, pretrial, that the grand jury proceedings were conducted in violation of these structural protections, the target is entitled to dismissal of the indictment and is not required to demonstrate prejudice. *See, e.g.*, *De Leon v. Hartley*, 2014-NMSC-005, ¶¶ 16-17, 316 P.3d 896 (holding that the district court should have quashed an indictment without requiring the target to show prejudice because the district attorney improperly exercised control over the selection and excusal of grand jurors and the defendant brought this to the attention of the district court before trial); *Davis*, 1977-NMSC-049, ¶ 4 (holding "that the presence of an unauthorized person before the grand jury requires dismissal of the indictment without the necessity of showing prejudice"); *Ulibarri*, 1999-NMCA-142, ¶¶ 13-15 (holding that the prosecuting attorney's failure to

instruct grand jurors on the record of the elements of the relevant criminal offenses warranted dismissal of the indictment without a showing of prejudice); *cf. State v. Bigler*, 1982-NMCA-136, ¶¶ 1, 8, 12, 98 N.M. 732, 652 P.2d 754 (holding that a sixty-five second gap in the audio recording of the grand jury proceedings, which was caused by an equipment malfunction, did not justify application of the per se prejudice rule). Our courts presume prejudice in such cases because the structural protections of the grand jury statutes preserve the integrity of the grand jury system and because, as a practical matter, evaluating actual prejudice would require a speculative inquiry and impose a difficult burden on the target and the courts. *See De Leon*, 2014-NMSC-005, ¶¶ 16-17; *Davis*, 1977-NMSC-049, ¶ 10; *Ulibarri*, 1999-NMCA-142, ¶¶ 14-15.

**The Prosecuting Attorney Interfered with the Grand Jury's Independent Duty to Investigate the Facts Bearing on the Issue of Probable Cause**

**{18}** During Petitioner's grand jury testimony, the prosecuting attorney prevented Petitioner from answering a grand juror's question regarding whether Petitioner ever told anyone that her husband was physically abusive to her. Petitioner argues that this inquiry into prior violence was relevant to her state of mind at the time of the shooting and that her answers would have helped the grand jury consider the issues of provocation and self-defense. The State responds that the prosecuting attorney acted in accordance with the grand jury judge's preliminary order excluding the potential witness testimony from Ms. Downs. We disagree with the State's interpretation of the grand jury judge's order.

**{19}** Our grand jury statutes permit the target of a grand jury investigation to alert the grand jury to exculpatory evidence or a relevant defense. *See* § 31-6-11(B); *see also* Rule 5-302A(B)(3) NMRA. To do so, the target must timely submit to the prosecuting attorney a grand jury alert notice containing "a factual and non-argumentative description of the nature of any tangible evidence and the potential testimony of any witnesses." Rule 5-302A(B)(3)(a). "[A]ny arguments as to the propriety or significance of the requested evidence and defenses" should be included in a separate cover letter, "which will not go to the grand jury." Rule 5-302A(B)(3)(b).

**{20}** If the target timely submits a grand jury alert notice to the prosecutor, the prosecutor is obligated to alert the grand jury to any target-offered evidence that is "lawful, competent and relevant," § 31-6-11(A), and "that would disprove or reduce [an] accusation or . . . make an indictment unjustified," § 31-6-11(B). *See Jones v. Murdoch*, 2009-NMSC-002, ¶ 33, 145 N.M. 473, 200 P.3d 523; Rule 5-302A(B)(3). Our grand jury statutes require only that the prosecuting attorney *alert* the grand jury to the existence of target-offered evidence and do not require the prosecutor to actually *present* such evidence. *See Jones*, 2009-NMSC-002, ¶¶ 12, 24. Once alerted to target-offered evidence, "the grand jury remains free to decide not to hear the evidence . . . or to hear the evidence and weigh it as it sees fit." *Id.* ¶ 12.

**{21}** Although the prosecutor performs a screening function to evaluate whether any target-offered evidence meets the evidentiary standard set forth in Section 31-6-11, the

prosecutor lacks discretion to unilaterally withhold such evidence from the grand jury. *See Jones*, 2009-NMSC-002, ¶¶ 27-28; Rule 5-302A(B)(3). If the prosecutor opposes the target's request that the grand jury be alerted to certain evidence or defenses, "the prosecutor must file a motion with the grand jury judge." *Jones*, 2009-NMSC-002, ¶ 35; *see* Rule 5-302A(B)(4). The prosecutor bears "the burden of persuading the grand jury judge that the grand jury should not be alerted to target-offered evidence." *Jones*, 2009-NMSC-002, ¶ 39. Upon receiving such a motion, the grand jury judge must determine whether the target-offered evidence is "lawful, competent, and relevant," and whether the evidence "disproves or reduces a charge or accusation" or "makes an indictment unjustified." Rule 5-302A(B)(2), (4); *see also Jones*, 2009-NMSC-002, ¶ 39. The judge shall issue an order providing the prosecutor with "clear direction on how to proceed before the grand jury." *Jones*, 2009-NMSC-002, ¶ 36; Rule 5-302A(B)(4).

**{22}** In this case, Petitioner submitted a grand jury alert letter to the prosecuting attorney, asking that the grand jury be alerted to the potential witness testimony of Ms. Downs. From the record before this Court, it appears that Petitioner submitted only the grand jury alert letter and did not include a separate cover letter or memorandum. *See Jones*, 2009-NMSC-002, ¶ 35 (explaining that "arguments as to the propriety or significance of the requested evidence" should be included in "a separate cover letter or memorandum"). The prosecutor sought to be relieved of the obligation to alert the grand jury that Ms. Downs was a potential witness, arguing that "[h]er proposed testimony is not relevant to a determination of probable cause. Battered Women's Syndrome is not a legally recognized defense." The grand jury judge ruled that the prosecutor did not have to alert the grand jury to the potential witness testimony from Ms. Downs because the relevant paragraph of Petitioner's grand jury alert letter contained legal arguments or conclusions.

**{23}** The grand jury judge's order excluding evidence arose in the context of Petitioner's request that the grand jury be alerted to the availability of certain evidence. The order was limited in scope to the prosecutor's duty to alert the grand jury to the potential testimony that Ms. Downs might provide if called as a witness. The order did not purport to limit Petitioner's own testimony before the grand jury, which she had a statutory right to present, *see* § 31-6-11(C)(3)-(4), or to preclude the grand jury from inquiring about domestic abuse on its own initiative. Given that Petitioner's testimony was outside the scope of the grand jury judge's preliminary order, the prosecutor should have permitted Petitioner to answer the grand juror's questions as long as Petitioner's testimony met the evidentiary standard set forth in Section 31-6-11, "lawful, competent and relevant." The State does not argue that the precluded testimony was irrelevant or otherwise inadmissible under Section 31-6-11. In fact, the prosecutor's own questions regarding whether Petitioner had ever "reported anything to anyone" appear to have triggered the grand juror's inquiry.

**{24}** By preventing Petitioner from answering a direct, relevant question from a grand juror, the prosecuting attorney interfered with the grand jury's statutory duty to make an independent inquiry into the evidence supporting a determination of probable cause. Section 31-6-11(B) requires

the grand jury to weigh all the evidence submitted to it, and when it has reason to believe that other lawful, competent and relevant evidence is available that would disprove or reduce a charge or accusation or that would make an indictment unjustified, then it shall order the evidence produced.

This statute makes it clear that the "grand jury may order that evidence be produced over and above that initially presented by the State." *Ulibarri*, 1999-NMCA-142, ¶ 11; *see also* § 31-6-12(A) (authorizing the grand jury to subpoena witnesses and cause the production of evidence). "Unless the grand jury is empowered to consider all lawful, relevant, and competent evidence bearing on the issue of probable cause, the grand jury cannot perform its historical role of determining whether those accused of wrongdoing by the government should suffer the burdens of a criminal prosecution." *Jones*, 2009-NMSC-002, ¶ 2.

**{25}** When serving as an aide to the grand jury, a prosecuting attorney must facilitate the grand jury's inquiry into any lawful, relevant, and competent evidence not initially presented by the State and cannot unilaterally withhold evidence or witnesses requested by the grand jury. *See id.*; *see also* § 31-6-7(A), (D); § 31-6-12(A). If the prosecuting attorney believes that the grand jury seeks evidence that falls within the scope of an order excluding evidence, the attorney must call a recess to obtain further guidance from the presiding grand jury judge before proceeding. For example, if a grand juror had wanted to subpoena Ms. Downs to testify before the grand jury, the prosecutor should have called a recess and consulted with the judge. Or, if the prosecutor had reasonable doubt regarding whether Petitioner's testimony fell within the scope of the grand jury judge's order, the prosecutor should have sought further guidance. And if the judge had ruled that the evidence requested by the grand jury did not meet the evidentiary standard set forth in Section 31-6-11(A), the prosecutor could have excluded that evidence and cautioned Petitioner and any other witnesses regarding any court-ordered limitations on their testimony. The prosecutor failed, however, to obtain any such guidance.

**{26}** We hold that the prosecuting attorney lacked authority to preclude Petitioner from answering direct questions from the grand jury and erred by interfering with the grand jury's inquiry into the evidence without first seeking guidance from the presiding grand jury judge. The grand jury's ability to obtain evidence beyond that presented by the State is critical to the structural integrity of our grand jury system. *See Ulibarri*, 1999-NMCA-142, ¶ 11. By interfering with the grand jury's independent investigation into the facts of this case, the prosecuting attorney undermined the grand jury's ability to accurately assess whether there was probable cause to prosecute Petitioner for a felony offense. *See Jones*, 2009-NMSC-002, ¶ 2 ("[T]he withholding of potentially exculpatory evidence strikes at the very heart of the grand jury's assessment of probable cause to indict.").

**The Prosecuting Attorney Failed to Act in a Fair and Impartial Manner When Instructing the Grand Jury on the Applicable Law**

**{27}** Petitioner also argues that the prosecuting attorney erred by instructing the grand jury

that Petitioner's testimony was "absolutely inappropriate" and suggesting that her testimony should be disregarded. The State contends that the grand jury was properly instructed. In the State's view, when the prosecuting attorney told the grand jurors that Petitioner's testimony was "absolutely inappropriate" she was merely explaining UJI 14-6007 NMRA, under which jurors are not to consider the consequences of their verdict. We disagree and conclude that the prosecuting attorney's remarks were inconsistent with the fair and impartial role that the prosecuting attorney must play when instructing the grand jury.

**{28}** Our grand jury statutes require the prosecuting attorney to act "in a fair and impartial manner at all times during grand jury proceedings," including when instructing the grand jury on the applicable law. *See* § 31-6-7(D). The prosecuting attorney must instruct the grand jury on "the elements of each offense being investigated and the definitions of any defenses raised by the evidence," and must provide any additional instructions that "are necessary to the fair consideration by the grand jury of the issues presented." Rule 5-302A(C). When providing these instructions, the prosecutor "must scrupulously refrain from words or conduct that may influence the decision of the grand jury." *State v. Augustin M.*, 2003-NMCA-065, ¶ 25, 133 N.M. 636, 68 P.3d 182 (internal quotation marks and citation omitted). By adhering to instructions modeled on the Uniform Jury Instructions promulgated by this Court, the prosecuting attorney can avoid improper statements and fulfill the duel obligations of protecting "not only the public interest but also the rights of the accused." *State v. Hill*, 1975-NMCA-093, ¶ 14, 88 N.M. 216, 539 P.2d 236.

**{29}** It was appropriate in this case for the prosecuting attorney to instruct the grand jury by reading the equivalent of several Uniform Jury Instructions, including UJI 14-5020 (Credibility of witnesses), UJI 14-5050 (Opinion testimony), and UJI 14-6006 (Jury sole judge of facts; sympathy or prejudice not to influence verdict). And it was proper for the prosecuting attorney to instruct the grand jury, "You must not concern yourself with the consequences of [the] verdict"—this language is taken from UJI 14-6007 (Jury must not consider penalty).

**{30}** The prosecuting attorney erred, however, when she expounded upon this Court's prescribed jury instructions by telling the grand jury, "She was directly appealing to you to consider the consequences of your verdict. That is absolutely inappropriate. Please do not let anything she said to you about, you know, implying what the right decision is influence your decisions. She was improperly seeking your sympathy." By adding this narrative to our Uniform Jury Instructions, the prosecuting attorney presented the equivalent of a closing argument regarding how the grand jurors should interpret the instructions as they relate to Petitioner. And in doing so, the prosecuting attorney stepped out of her role as a neutral aide to the grand jury, compromising the grand jury's independent evaluation of Petitioner's testimony and determination of probable cause.

**{31}** Providing accurate, unbiased instructions to the grand jury is critical to the structural integrity of our grand jury system. We hold that the prosecuting attorney's failure to do so in this case warrants dismissal of the indictment regardless of whether Petitioner has

11

demonstrated prejudice.

**CONCLUSION**

**{32}**    The prosecuting attorney conducted the grand jury proceedings in a manner that violated grand jury statutes designed to protect the structural integrity of our grand jury system, rendering the proceedings fundamentally unfair and warranting a presumption of prejudice to Petitioner. We therefore granted Petitioner's request for extraordinary relief and ordered the district court to dismiss the indictment. The State remains free to institute new criminal proceedings against Petitioner.

**{33}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**